IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BRANDON FINCHUM, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 9:21-CV-285-MJT-CLS |
| NACOGDOCHES COUNTY, | § § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
ON DEFEENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. CIV. R. 72.  Pending before the court is Defendant Nacogdoches County's Motion for Summary Judgment.  (Doc. #40.)  After review, the undersigned recommends denying the motion.

## I. Plaintiff's Claims and Procedural History

On November 7, 2022, Plaintiff Brandon Finchum[1] filed suit against Defendant Nacogdoches County[2] asserting various state and federal claims arising from Plaintiff's

---

[1] Paul Anderson, counsel for Plaintiff Brandon Finchum, was originally a named co-plaintiff in this suit as well as counsel of record. (Doc. #1.) Anderson has since voluntarily dismissed himself as a plaintiff (docs. #13, 15) but continues to serve as counsel.

[2] The original complaint (doc. #1) named Nacogdoches County, the Nacogdoches County District Attorney's Office, County Attorney John Fleming, Sheriff Jason Bridges, and District Attorney Andrew Jones in their official capacities. Plaintiff's claims against the Nacogdoches County District Attorney's Office, County Attorney John Fleming, Sheriff Jason Bridges, and District Attorney Andrew Jones were deemed stricken and withdrawn by the undersigned's August 3, 2022, Report and Recommendation (doc. #47), adopted in full on August 24, 2022 (doc. #65). Accordingly, Nacogdoches County is the only remaining defendant in this suit.

allegations that Defendant unlawfully recorded and listened to telephone calls between Plaintiff and his attorney, Paul Anderson, while Plaintiff was incarcerated in the Nacogdoches County Jail. Pursuant to the undersigned's December 23, 2022, Order Granting Plaintiff's Motion for Leave to File Amended Complaint (doc. #90), the current operative complaint is the Third Amended Complaint (doc. #84).[3] However, at the time Defendant filed this Motion for Summary Judgment, the operative complaint was the Second Amended Complaint (doc. #25), filed on May 20, 2022. Several of Plaintiff's claims in the Second Amended Complaint were dismissed or deemed stricken pursuant to the undersigned's August 3, 2022, Report and Recommendation (doc. #47) and order adopting the recommendation (doc. #65). The following claims are currently before the court: claims under the Federal Wiretap Act, the Texas Wiretap Act, and 42 U.S.C. § 1983 for violations of the Fourth Amendment.

Defendant filed a Motion for Summary Judgment (doc. #40) on July 13, 2022, seeking dismissal of Plaintiff's remaining claims asserted in the Second Amended Complaint (doc. #25). Plaintiff filed a court-ordered response to the motion on December 16, 2022 (doc. #87), and Defendant filed a reply on December 23, 2022 (doc. #93). This matter is now ripe for consideration.

## II.     Legal Standard

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This rule places the initial burden on the moving party to identify

---

[3] As explained in the order (doc. #90), the Third Amended Complaint does not "add" any new claims not already asserted in the Second Amended Complaint. Rather, the amendments in the Third Amended Complaint clarify Plaintiff's already-asserted claims and add supporting factual allegations, and Plaintiff's motion for leave (doc. #83) was granted on those grounds.

2

those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. *Id.* at 248. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Chambers v. Sears, Roebuck and Co.*, 428 Fed. App'x 400, 407 (5th Cir. 2011) (citing *Duffy v. Leading Edge Products Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).

Once the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. However, the non-movant may not rest on mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial. *Toney v. United States*, 273 Fed. App'x 384, 385-86 (5th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248-49). The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence. *Lindquist v. City of Pasadena*, 669 F.3d 225, 232-33 (5th Cir. 2012) (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.

1996)). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Hugh Symons Group*, 292 F.3d at 468 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citing *Forsyth*, 19 F.3d at 1537). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Infante v. Law Office of Joseph Onwuteaka, P.C.*, 735 Fed. App'x 839, 843 (5th Cir. 2018) (citation omitted); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992); FED. R. CIV. P. 56(c)(3) ("[T]he court need consider only the cited materials."). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**III. Discussion**

A. <u>Administrative Remedies</u>

Defendant Nacogdoches County first asserts that it is entitled to summary judgment on all of Plaintiff's claims because Plaintiff failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA). (Doc. #40 at 8.) In response, Plaintiff argues that (1) the administrative exhaustion requirement is inapplicable and (2) even if it were applicable, the administrative remedies set forth in the Nacogdoches County Jail handbook were not available to Plaintiff. (Doc. #87 at 6-9.)

Section 1997e(a) of PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such

4

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendant submits that the Nacogdoches County Jail grievance procedure is as follows: the inmate must fill out a grievance form; a grievance officer then reviews the grievance, determines the appropriate action to redress it, and submits a written response to the inmate; if the inmate disagrees with the response from the Grievance Officer, they may appeal the dispute to the sheriff, in writing, and the sheriff renders a final decision on the grievance. (Doc. #40, Ex. 1 at 2.) Defendant states that this process is detailed in the Nacogdoches County Inmate Handbook and that Plaintiff received a copy of the handbook and acknowledged receipt of it. (Doc. #40, Ex. 1 at 2-3.) Finally, Defendant states that Plaintiff did not submit a grievance "regarding the claims he attempts to bring in this case," thus Plaintiff failed to exhaust his administrative remedies as required by PLRA. (Doc. #40, Ex. 1 at 3.)

Plaintiff first asserts that the administrative exhaustion requirement is inapplicable here. As Plaintiff notes, this action is based on civil rights violations committed by non-lawyer employees of the Nacogdoches County District Attorney's Office, rather than by employees of the Nacogdoches County Jail. (Doc. #87 at 6.) Both Plaintiff and Defendant submitted a copy of the inmate handbook's section on grievance procedures. (Doc. #40, Ex. 3 at 2-3 and Doc. #87, Ex. 16 at 2-3.) Although the submitted portions of the inmate handbook do not explicitly state that it only covers grievances for acts committed by jail employees, the language used in the handbook and the fact that it is a document intended for internal use in the Nacogdoches County Jail indicates that it does not cover, nor is it designed to cover, grievances for acts committed by non-jail employees. Exhaustion of administrative remedies is not required when "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Dillon v. Rogers*, 596 F.3d 260, 267 (5th Cir. 2010) (quoting *Booth v.*

5

*Churner*, 532 U.S. 731, 736 (2001)). As such, Plaintiff was not required to follow this grievance procedure before filing this suit.

Further, even if the administrative exhaustion requirement under PLRA was applicable, Plaintiff has—at the very least—demonstrated there is a genuine issue of fact as to whether the grievance procedure was available to him. PLRA only requires the exhaustion of administrative remedies that are *available* to the inmate. *See Ross v. Blake*, 578 U.S. 632, 635 (2016) (emphasizing PLRA's "built-in exception" that a prisoner need not exhaust remedies if they are not available); 42 U.S.C. § 1997e(a). An administrative procedure is unavailable when (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use" such that the "mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it, or (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. Here, Plaintiff states that the grievance procedure was not available because he was informed that there were "no grievance forms," "no grievance officer," and no "means to appeal." (Doc. #87, Ex. 1 at ¶¶ 5-9.) The grievance procedure outlined in the inmate handbook makes clear that the grievance forms, grievance officers, and means of appeal are integral aspects of this administrative remedy. Thus, without these resources,[4] there is a genuine issue of fact as to whether this administrative remedy was truly "available" to Plaintiff within the meaning of PLRA.

---

[4] In their reply (doc. #93 at 3), Defendant disputes Plaintiff's assertion that no grievance officer or grievance forms were available. To rebut Plaintiff's argument that grievance forms were not available, Defendant cites to a grievance form filled out by Plaintiff on January 26, 2020. (Doc. #93, Ex. 1). However, the events giving rise to this litigation took place on or around May 2020 (doc. #84 at 3), thus a grievance form from several months prior does not resolve the fact issue as to whether grievance forms were available to Plaintiff at the time the events giving rise to the grievance took place. Further, it is not clear what evidence Defendant offers to rebut Plaintiff's assertion that a grievance officer was not available. At best, Defendant's summary judgment evidence in its motion and reply (docs. #40, 93) demonstrate that there is a genuine issue of fact as to whether the grievance procedure was available to Plaintiff.

6

Accordingly, the undesigned finds that the administrative exhaustion requirement is not applicable to Plaintiff's claims. The undersigned further finds that, if the administrative exhaustion requirement was applicable, Plaintiff has demonstrated that there is a genuine issue of fact as to whether that remedy was available. Thus, Defendant is not entitled to summary judgment on Plaintiff's claims based on Plaintiff's failure to follow the Nacogdoches County Jail's grievance procedure.

### B. Federal Wiretap Act

Defendant asserts that it is entitled to summary judgment on Plaintiff's Federal Wiretap Act claim because the calls at issue were excepted under the act. (Doc. #40 at 11.) The Federal Wiretap Act generally prohibits intentional interception, use, or disclosure of wire, oral, or electronic communications, including telephone communications. 18 U.S.C. § 2511. The act contains two relevant exceptions that Defendant asserts apply here—the law enforcement exception and the consent exception. However, for the reasons discussed below, these exceptions do not apply. Thus, Defendant is not entitled to summary judgment on Plaintiff's Federal Wiretap Act claim.

#### 1. *Law Enforcement Exception*

The law enforcement exception allows the interception of communications by investigative or law enforcement officers in the ordinary course of their duties. 18 U.S.C. § 2510(5)(a)(ii). Defendant cites several cases in support of its assertion that the law enforcement exception applies here. (Doc. #40 at 11-12.) However, the cited cases exempt the mere *recording* of inmate telephone calls in correctional settings. Plaintiff's claims concern not just the recording of those calls, but the intentional listening to and disclosure of privileged phone calls with his attorney. (Doc. #25 at ¶¶ 20-21 and Doc. #87 at 9.)

Inmate phone calls are routinely recorded in correctional settings, and many circuits have held that such recording is exempt from the Federal Wiretap Act under the law enforcement exception. *See, e.g.*, *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States v. Paul*, 614 F.2d 115, 117 (6th Cir. 1980); *United States v. Feekes*, 879 F.2d 1562, 1565-66 (7th Cir. 1989). However, the undersigned finds that there is a significant distinction between the routine recording of inmate phone calls and intentionally listening to specific recordings of privileged phone calls between an inmate and his attorney—particularly when the inmate called his attorney to discuss a civil suit he was bringing against county officials and jail employees. Such conduct is not within the ordinary course of law enforcement duties. Other courts in this circuit have reached a similar conclusion. *See, e.g.*, *Austin Lawyers Guild v. Securus Techs., Inc.*, No. 1:14-CV-366-LY, 2015 WL 10818584, at *10-11 (W.D. Tex. Feb. 4, 2015); *cf. Garza v. Bexar Metro. Water Dist.*, 639 F. Supp. 2d 770, 775 (W.D. Tex. 2009) (finding that plaintiff sufficiently alleged a claim under the Federal Wiretap Act and Texas Wiretap Act because defendants "reserving the right to monitor and access" stored inmate messages did not mean that defendants were permitted to intercept and listen to entire telephone conversations). Thus, the law enforcement exception does not apply.

  2. *Consent*

Section 2511(2)(c) permits the interception of communications by where at least one person who is party to the communication has given prior consent to the interception. 18 U.S.C. § 2511(2)(c). Defendant argues that the consent exception applies because Plaintiff knew his phone calls would be recorded[5] per the inmate handbook, and he impliedly consented when he

---

[5] The undersigned notes that the inmate handbook states that "[a]ll telephone calls into and out of the Jail are recorded." (Doc. #40, Ex. 3 at 3.) As Plaintiff correctly points out in his response (doc. #87 at 10), the handbook only states that calls will be recorded—the handbook does not warn that, in addition to recording, calls will be

8

chose to make phone calls. (Doc. #40 at 13, Ex. 3 at 3.) However, Defendant again fails to address the true nature of Plaintiff's claims in both its motion and reply (docs. #40, 93). Plaintiff may have impliedly consented to the routine recording of his calls, but Plaintiff did not consent to the listening and subsequent disclosure to other county officials of privileged phone calls made to his attorney. *Cf. Garza*, 639 F. Supp. 2d at 775. Thus, the consent exception does not apply.

### C. Texas Wiretap Act

Defendant asserts that it is entitled to summary judgment on Plaintiff's Texas Wiretap Act claim because (1) sovereign immunity has not been waived and (2) the calls at issue are subject to the act's consent exceptions. (Doc. #40 at 14-15.) The undersigned finds, however, that sovereign immunity has been waived, and the consent exception does not apply, thus Defendant is not entitled to summary judgment on this claim.

#### 1. *Sovereign Immunity*

Defendant cites to *City of Oak Ridge North v. Mendes*, 339 S.W.3d 222, 232-34 (Tex. App.—Beaumont 2011, no pet.) in support of its argument that it is immune from suits under the Texas Wiretap Act. (Doc. #40 at 14.) However, that opinion is not binding on this court, and the undersigned not aware of other opinions, state or federal, that have reached the same conclusion on sovereign immunity under this statute. Instead, other federal courts have reached the opposite conclusion. *Garza*, 639 F. Supp. 2d at 775 (citations omitted) (finding waiver of sovereign immunity under the Texas Wiretap Act due to its similarities to the Federal Wiretap Act and because the statute explicitly defines a "person" who can be sued under the statute to include the government or a governmental subdivision or agency); *Austin Lawyers Guild*, 2015 WL 10818584, at *10 n.2 (same). The undersigned agrees with the reasoning in these cases and finds

---

"monitored" or are "subject to monitoring" (as Defendant writes numerous times in their motion), much less any mention that privileged calls would be disclosed and listened to by prosecutors and other county officials.

9

that sovereign immunity has been waived under the Texas Wiretap Act. Thus, Defendant is not immune from suit.

### 2. *Consent Exception*

The Texas Wiretap Act provides that a communication is only intercepted in violation of the statute if it is "made without the consent of a party to the communication." Tex. CIV. PRAC. & REM. CODE § 123.001(2). Thus, Defendant contends that, even if sovereign immunity is deemed waived, the consent exception under the Texas Wiretap Act applies. In support of this argument, Defendant cites the same evidence and arguments cited regarding the Federal Wiretap Act. For the reasons discussed *supra* § III.B.2, the consent exception does not apply.

### D. Fourth Amendment Claim

Last, Defendant asserts it is entitled to summary judgment on Plaintiff's Fourth Amendment claim because (1) Plaintiff did not have a reasonable expectation of privacy in the calls at issue and (2) even so, Plaintiff consented to the recording of the calls. (Doc. #40 at 16-17.)

### 1. *Municipal Liability under 42 U.S.C. § 1983*

As a preliminary matter, Plaintiff brings his Fourth Amendment claim pursuant to 42 U.S.C. § 1983 against Defendant, Nacogdoches County. A county can only be sued under 42 U.S.C. § 1983 if it has a policy or custom that played a part in the constitutional violation. *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 Fed. App'x 958, 962 (5th Cir. 2020) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012)). Thus, at the summary judgment stage, a plaintiff alleging a direct claim of municipal liability must demonstrate there is a factual dispute as to the following elements: (1) an official policy or custom exists; (2) the policy or custom was promulgated by the municipal policymaker; and (3) the policy

or custom was the moving force behind the constitutional violation. *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015)).

Here, Defendant has not challenged whether Plaintiff has alleged an official policy or custom which caused the alleged Fourth Amendment violation in its Motion for Summary Judgment or reply (docs. #40, 93). Defendant has not presented summary judgment evidence demonstrating an absence of a genuine issue of fact as to whether it has a policy or custom of listening to and disclosing privileged attorney-client phone calls to county officials promulgated by its official policymaker. Plaintiff's Second Amended Complaint[6] alleges such a policy or custom exists and that the alleged constitutional violation was inflicted pursuant to this policy or custom. (Doc. #25 at ¶¶ 8, 30, 32, 40, 45, 46, 96, 101.) The undersigned will proceed to evaluate whether Plaintiff has sufficiently alleged a Fourth Amendment Violation, the only issue raised in this summary judgment motion.

## 2. *Reasonable Expectation of Privacy*

The Fourth Amendment protects against unreasonable searches and seizures, and a "search" can include recording phone calls. *Katz v. United States*, 389 U.S. 347, 353 (1967). However, government recording and monitoring of phone calls only violates the Fourth Amendment if the parties to the phone call have a reasonable expectation of privacy in the conversation. *Katz*, 389 U.S. at 351-52. To establish this, Plaintiff must demonstrate that he had "an actual, subjective expectation of privacy, and that his expectation of privacy is objectively reasonable." *Austin Lawyers Guild*, 2015 WL 10818584, at *11 (citing *Zaffuto v. City of Hammond*, 308 F.3d 485, 488 (5th Cir. 2002).

---

[6] As discussed *supra* § I, the Second Amended Complaint (doc. #25) was the operative complaint when Defendant's motion was submitted.

Defendant argues that Plaintiff had neither a subjective nor objectively reasonable expectation of privacy because he made the phone calls knowing that they would be recorded and in the presence of other inmates. (Doc. #40 at 17.) However, as discussed throughout this report, there is a significant distinction between routinely recording phone calls and listening to and disclosing privileged phone calls from an inmate to his attorney. Multiple courts have held that inmates still maintain a reasonable expectation of privacy when it comes to privileged attorney-client communications, including phone calls. *Austin Lawyers Guild*, 2015 WL 10818584, at *12 (finding a reasonable expectation of privacy in privileged attorney-client phone calls that were routinely recorded); *cf. Panetti v. Davis*, 863 F.3d 366, 383-84 (5th Cir. 2017) (citing *United States v. Harrelson*, 754 F.2d 1153, 1168-69 (5th Cir. 1985)) ("An inmate's phone calls may be intercepted and recorded unless privileged."); *Garza*, 639 F. Supp. 2d at 774-75 (finding that plaintiff maintained a reasonable expectation of privacy despite defendants "reserving the right to monitor and access" stored inmate messages). Thus, the undersigned finds that Plaintiff maintained an objectively reasonable expectation of privacy in the phone calls at issue.

Additionally, Plaintiff has submitted evidence to support his contention that he maintained a subjective expectation of privacy despite making the phone call in a jail setting with other inmates present. Plaintiff states that he made his calls "according to the customs of the jail whereby prisoners create amongst themselves an expectation of privacy" by making his calls in a secluded area and covering himself with a blanket, which indicates to other prisoners that the call is private. (Doc. #87, Ex. 1 at ¶ 2.) Thus, Plaintiff has at least shown there is a genuine issue of fact as to whether he had a subjective expectation of privacy.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's Fourth Amendment claim on the ground that Plaintiff lacked a reasonable expectation of privacy in the phone calls at issue.

### 3. *Consent*

For the reasons discussed *supra* § III.B.2, Plaintiff's consent extended only to the routine recording of his phone calls. Plaintiff did not consent to the listening to, and disclosure to, other county officials of his privileged phone calls to his attorney, which is the basis of Plaintiff's claim. Thus, the consent exception to the Fourth Amendment does not apply, and Defendant is not entitled to summary judgment on Plaintiff's Fourth Amendment claim.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends denying Defendant's Motion for Summary Judgment (doc. #40).

## V. Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 29th day of December, 2022.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE