IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| BRANDON FINCHUM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:21-CV-285-MJT-CLS |
| | § | |
| NACOGDOCHES COUNTY, | § | |
| | § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
ON DEFEENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOCAL R. CV-72.  Pending before the court is Defendant Nacogdoches County's second Motion for Summary Judgment.  (Doc. #132.)  After review, the undersigned recommends granting the motion and dismissing Plaintiff's *Monell* claim.

**I.      Plaintiff's Claims and Procedural History**

On November 7, 2022, Plaintiff Brandon Finchum[1] filed suit against Defendant Nacogdoches County[2] asserting various state and federal claims arising from Plaintiff's

---

[1] Paul Anderson, counsel for Plaintiff Brandon Finchum, was originally a named co-plaintiff in this suit as well as counsel of record.  (Doc. #1.)  Anderson has since voluntarily dismissed himself as a plaintiff (docs. #13, 15) but continues to serve as counsel.

[2] The original complaint (doc. #1) named Nacogdoches County, the Nacogdoches County District Attorney's Office, County Attorney John Fleming, Sheriff Jason Bridges, and District Attorney Andrew Jones in their official capacities. Plaintiff's claims against the Nacogdoches County District Attorney's Office, County Attorney John Fleming, Sheriff Jason Bridges, and District Attorney Andrew Jones were deemed stricken and withdrawn by the undersigned's August 3, 2022, Report and Recommendation (doc. #47), adopted in full on August 24, 2022 (doc. #65).  Accordingly, Nacogdoches County is the only remaining defendant in this suit.

allegations that Defendant unlawfully recorded and listened to telephone calls between Plaintiff and his attorney, Paul Anderson, while Plaintiff was incarcerated in the Nacogdoches County Jail. Pursuant to the undersigned's December 23, 2022, Order Granting Plaintiff's Motion for Leave to File Amended Complaint (doc. #90), the current operative complaint is the Third Amended Complaint (doc. #84).[3] The following claims are before the court: claims under the Federal Wiretap Act, the Texas Wiretap Act,[4] and a 42 U.S.C. § 1983 *Monell* claim for violations of the Fourth Amendment.

Defendant's first Motion for Summary Judgment[5] (doc. #40) was submitted when the Second Amendment Complaint (doc. #25) was the operative complaint and thus did not challenge Plaintiff's *Monell* claim. In light of the undersigned's order permitting Plaintiff to amend his complaint at this stage of the litigation, the undersigned issued a related Amended Scheduling Order (doc. #91) permitting Defendant to file a second summary judgment motion on Plaintiff's *Monell* claim. As such, the pending second Motion for Summary Judgment (doc. #132) is limited to Plaintiff's *Monell* claim.

Defendant filed its second Motion for Summary Judgment (doc. #132) on February 28, 2023, seeking dismissal of Plaintiff's *Monell* claim. Plaintiff responded (doc. #139) on March 20, 2023. Defendant replied (doc. #143) on March 27, 2023. This matter is now ripe for consideration.

---

[3] As explained in the order (doc. #90), the Third Amended Complaint does not "add" any new claims not already asserted in the Second Amended Complaint. Rather, the amendments in the Third Amended Complaint clarify Plaintiff's already-asserted claims and add supporting factual allegations, and Plaintiff's motion for leave (doc. #83) was granted on those grounds.

[4] The court's denial of sovereign immunity on the Texas Wiretap Act claims is currently on interlocutory appeal.

[5] Defendant's first Motion for Summary Judgment (doc. #40) was denied. (Docs. #94, 101.)

## II. Legal Standard

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. *Id.* at 248. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Chambers v. Sears, Roebuck and Co.*, 428 Fed. App'x 400, 407 (5th Cir. 2011) (citing *Duffy v. Leading Edge Products Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).

Once the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence. *Lindquist v. City of Pasadena*, 669 F.3d 225, 232-33 (5th Cir. 2012) (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Hugh Symons Group, plc v. Motorola,*

*Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Hugh Symons Group*, 292 F.3d at 468 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citing *Forsyth*, 19 F.3d at 1537). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Infante v. Law Office of Joseph Onwuteaka, P.C.*, 735 Fed. App'x 839, 843 (5th Cir. 2018) (citation omitted); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992); FED. R. CIV. P. 56(c)(3) ("[T]he court need consider only the cited materials."). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**III.   Discussion**

Defendant seeks summary judgment dismissing Plaintiff's *Monell* claim on two grounds. First, Defendant argues that no Fourth Amendment violation occurred because (1) Plaintiff impliedly consented to the recording of his attorney-client phone calls, (2) Plaintiff had no reasonable expectation of privacy in his attorney-client phone calls, and (3) Defendant did not intentionally listen to the attorney-client phone calls. (Doc. #132 at 2.) Second, Defendant argues that Plaintiff cannot establish that Defendant, Nacogdoches County, had a policy, custom, or practice of listening to privileged attorney-client jail phone calls. (Doc. #132 at 2.)

A. <u>Municipal Liability under 42 U.S.C. § 19883 (*Monell* Claim)</u>

Plaintiff brings his Fourth Amendment *Monell* claim pursuant to 42 U.S.C. § 1983 against Defendant, Nacogdoches County. A county can only be sued for a constitutional violation under 42 U.S.C. § 1983 if the county has a policy or custom that played a part in the constitutional violation. *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 Fed. App'x 958, 962 (5th Cir. 2020) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012)).

Thus, at the summary judgment stage, a plaintiff alleging a direct claim of municipal liability must demonstrate there is a factual dispute as to the following elements: (1) an official policy or custom exists; (2) the policy or custom was promulgated by the municipal policymaker; and (3) the policy or custom was the moving force behind the constitutional violation. *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015)).

B. <u>Defendant's Fourth Amendment Challenge</u>

Defendant seeks summary judgment on the ground that there is no genuine issue of material fact as to whether the underlying constitutional violation alleged as the basis for Plaintiff's *Monell* claim occurred. Here, Plaintiff claims that Defendant violated Plaintiff's Fourth Amendment rights by intentionally listening to and disclosing privileged phone calls made from jail to his attorney.

The question of whether there is a genuine issue of material fact that Defendant violated Plaintiff's Fourth Amendment rights has already been fully considered and determined by this court. In its first Motion for Summary Judgment, Defendant asserted that it was entitled to summary judgment on Plaintiff's Fourth Amendment claim because (1) Plaintiff did not have a

reasonable expectation of privacy in the calls at issue and (2) even so, Plaintiff consented to the recording of the calls. (Doc. #40 at 16-17.) The undersigned determined that there was a genuine issue of material fact as to whether the underlying Fourth Amendment violation occurred (doc. #94 at 10-13), and the undersigned's recommendation that summary judgment be denied on this ground was adopted by the district court (doc. #101).

Defendant was granted leave to file a second summary judgment motion in order to allow Defendant an opportunity to challenge whether Plaintiff can demonstrate there is a genuine issue of fact as to whether Defendant, Nacogdoches County, has an official policy or custom which caused the alleged Fourth Amendment violation, as is required for Plaintiff to maintain a *Monell* claim.[6] Defendant has already had (and used) a full and fair opportunity in its first Motion for Summary Judgment to challenge the underlying Fourth Amendment violation that is the basis of Plaintiff's *Monell* claim. Accordingly, the undersigned need not reconsider an issue that has already been fully considered and determined in Defendant's first Motion for Summary Judgment (doc. #40). Defendant's Motion for Summary Judgment is therefore denied as moot on this ground.

---

[6] The undersigned understands that the Amended Scheduling Order (doc. #91) and Order (doc. #90) granting Plaintiff leave to file his Third Amendment Complaint extended the deadline for motions for summary judgment "on Plaintiff's claim under 42 U.S.C. § 1983." Since this claim requires both an underlying constitutional violation *and* a policy, practice, or custom giving rise to the violation, the court understands why Defendant chose to include arguments relating to the Fourth Amendment, in addition to arguments relating to the policy or custom element, in its second Motion for Summary Judgment (doc. #132). The undersigned writes to make clear that including such arguments was not in violation of the undersigned's limited extension of the dispositive motion deadline due to the inclusive and/or ambiguous language used in the Amended Scheduling Order and Order granting leave (docs. #90, 91). Nonetheless, as is discussed in this section, the undersigned need not reconsider an issue that has already been fully considered and determined in a previous summary judgment motion. The purpose of allowing a second summary judgment motion was not to grant Defendant a second proverbial bite at the apple but, rather, to provide Defendant with a fair opportunity to challenge the "policy, practice, or custom" aspect of Plaintiff's *Monell* claim.

### C. Defendant's *Monell* Challenge

#### 1. *Relevant Undisputed Facts*[7]

The following undisputed facts are relevant to determining if there is a genuine issue of material fact as to whether Nacogdoches County had a policy, custom, or practice of listening to privileged attorney-client jail phone calls.

Plaintiff was booked as an inmate into Nacogdoches County Jail ("the jail") on September 5, 2019. (Doc. #132 at 3.) The jail has a routine practice of recording all telephone calls into and out of the jail. (Doc. #132-3 at 2.) All jail phone calls begin with a recorded notice that the call will be recorded and may be subject to monitoring at any time. (Doc. #132 at 4.) Investigators or other authorized personnel may, at times, listen to calls when the need arises to investigate potential crimes and/or for jail security. (Doc. #132 at 4.) Jail inmates are permitted to make calls to their attorneys from these phones. (Doc. #132-3 at 2.)

Plaintiff retained Paul Anderson as his attorney on approximately May 2, 2021, for a potential civil lawsuit relating to alleged excessive force from a jail employee. (Docs. #132 at 4.) Plaintiff was additionally represented by Courtney Luther, an attorney with Disability Rights of Texas, regarding a civil matter relating to the jail. (Doc. #132 at 9.) On approximately May 18, 2021, two non-lawyer employees (a victim's assistance coordinator and a law student intern) of the Nacogdoches County Attorney's office listened to the jail recordings of approximately four phone calls made by Plaintiff to either Paul Anderson or Courtney Luther from the jail. (Docs.

---

[7] Plaintiff chose not to respond to Defendant's statement of undisputed facts in his response to Defendant's second Motion for Summary Judgment, instead writing that he "incorporates the Response to Statement of Undisputed Facts set forth in his opposition to Defendant's first summary judgment motion." (Doc. #139 at 2.) The undesigned notes that Plaintiff's "incorporation by reference" to his response (doc. #87) to the first summary judgment motion—a summary judgment motion primarily on different issues—is both inconvenient for the court, unwise to the extent that the *relevant* undisputed facts are not necessarily the same as those in the prior summary judgment motion which did not address *Monell* liability, and in violation of the Local Rules. *See* E.D. TEX. LOCAL R. CV-7(a)(1), (d) ("Responses to case dispositive motions *must* include a response to the movant's statement of issues;" "The response and any briefing shall be contained in *one* document.") (emphasis added).

#132 at 5-6.) One employee was directed to listen to Plaintiff's calls by John Fleming, Nacogdoches County Attorney, in order to locate a call between Plaintiff and his father or girlfriend in which he stated he was going to file a lawsuit. (Doc. #132 at 5.) The other employee, although not specifically directed, listened to Plaintiff's calls because she had free time and thought she could be of help on the matter. (Doc. #132-11.) The two employees did not intend to listen to privileged phone calls between Finchum and Anderson or Luther, nor were they directed to do so by Fleming. (Docs. #132-11, 132-12.) When the two non-lawyer employees realized that they had listened to potentially privileged attorney-client phone calls from the jail, they informed Fleming regarding what they had heard, who instructed them to stop working on the open records request submitted by Plaintiff's attorneys in relation to the potential civil lawsuit and to not disclose to anyone what they had heard on the calls. (Docs. #132 at 6, 132-11, 132-12.)

The following day, Fleming emailed Anderson and Luther to disclose that their phone calls with Plaintiff had been listened to by employees in his office. (Doc. #132 at 7.) In the email to Anderson, Fleming stated that the employee had not been directed to listen to the call and that the call had not been listened to with ill intent. (Doc. #132-5.) The email also stated that Fleming takes responsibility for his employees' actions, that he had since discussed the matter with the employees and instructed them not to disclose anything heard in the recording to anyone, and had taken steps to avoid such an incident happening again. (Doc. #132-5.) In the email to Luther, Fleming stated similarly and added that the employees had been separated from any work on a response to an open records request submitted by Plaintiff's attorneys in relation to the potential civil lawsuit. (Doc. #132-6.) Fleming also stated that he and his employees contacted the ethics

8

helpline and was happy to provide additional information on the matter if requested. (Doc. #132-6.)

The matter was resolved without litigation between Fleming, on behalf of county, and Luther. (Doc. #132 at 7.) However, Plaintiff ultimately filed the instant suit against Nacogdoches County on November 7, 2022, regarding this matter.

2. *Plaintiff cannot maintain his* Monell *claim.*

As previously stated, to maintain his *Monell* claim, Plaintiff must establish there is a genuine issue of fact that (1) an official policy or custom exists; (2) the policy or custom was promulgated by the municipal policymaker; and (3) the policy or custom was the moving force behind the constitutional violation. Defendant argues that Plaintiff cannot demonstrate there a genuine issue of fact as to whether Nacogdoches County had a policy, custom, or practice of listening to privileged attorney-client jail phone calls.

If the municipality has an official policy that itself violates federal law or directs an employee to do so, then the policy is facially unconstitutional, and proving the existence of facially unconstitutional official policy is sufficient to satisfy all three *Monell* elements. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("Where an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation will most likely occur."). However, Plaintiff does not allege that Nacogdoches County has any official written policy of listening to privileged attorney-client jail phone calls—nor would the summary judgment evidence support that allegation. Indeed, it is rare for a municipality to promulgate a facially unconstitutional official policy, and most *Monell* claims do not proceed on this theory.

Instead, Plaintiff alleges the more common type of *Monell* claim—that Nacogdoches County had a custom, or *de facto* policy, that was the moving force behind the alleged Fourth Amendment violation. Here, Plaintiff's alleged custom is premised on two theories: (1) the county has an "affirmative" custom of having county employees listen to privileged attorney-client jail phone calls; or (2) a custom of "omission," otherwise known as the "failure to train" theory, in which the county failed to train its employees to avoid listening privileged attorney-client jail phone calls to the point where employees engaged in this activity so often that it can be fairly deemed a custom. *Burge*, 336 F.3d at 370 (discussing the two types of custom theories of *Monell* liability).

To prove an affirmative custom, Plaintiff must establish that Nacogdoches County had a custom of listening to privileged attorney-client jail phone calls that was "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *see also Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (citation omitted). Plaintiff must further show that the custom was adopted "with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Burge*, 336 F.3d at 370 (citing *Piotrowski*, 237 F.3d at 579). To prove a failure to train, Plaintiff must establish that (1) Nacogdoches County failed to train or supervise the employees involved, (2) there is a causal connection between the alleged failure to train or supervise and the alleged violation of Plaintiff's rights, and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Id.*, 336 F.3d at 370 (citations omitted).

Thus, both the affirmative custom theory and failure to train theory require Plaintiff to prove deliberate indifference. *Id.* ("Both . . . theories, therefore, required proof of deliberate indifference.") Furthermore, proof of deliberate indifference "generally requires that a plaintiff demonstrate 'at least a pattern of similar [constitutional] violations.'"[8] *Id.* (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).

Here, Plaintiff has not carried his burden to demonstrate there is a genuine issue of material fact on a number of these requirements for either theory.

First, the summary judgment evidence does not support that allegation that Nacogdoches County has a persistent, widespread practice of listening to privileged attorney-client jail phone calls necessary to prove that Nacogdoches has an affirmative custom. Defendant's summary judgment evidence shows that a small number Plaintiff's phone calls (privileged or otherwise) were listened to on a single occasion by the two non-lawyer employees. This is supported by the following: Sheriff Jason Bridges states in his sworn affidavit that he is "not aware of the Sheriff's Office listening to attorney-client phone calls," "this situation has not come up in the past," "I also never knew of any issue with county employees or officers overhearing or listening to attorney communications," "the situation involved in this case was not just an isolated incident, it was the only such incident ever" (doc. #132-1 at 2-3); John Fleming's emails to Anderson and Luther disclose the single occasion of when the two non-lawyer employees listened to Plaintiff's jail phone calls (doc. #132-5, 132-6); John Fleming, in his sworn affidavit, explains the discrete events that led to the employees listening to potentially privileged attorney-client jail phone calls

---

[8] In *Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court hypothesized that, in a narrow range of circumstances a single instance of a constitutional violation could support a failure to train theory of *Monell* liability, but the violation would need to be a highly predictable consequence of the failure to train in order to justify a finding of deliberate indifference by the municipal policymakers. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409-10 (discussing the hypothesized circumstances in *Canton* of a single incident supporting deliberate indifference).

11

from Plaintiff to Anderson and/or Luther, details the actions taken after they realized what had happened, and states that he is "not aware of any [other] instances of listening to calls between inmates and their attorneys and we did not have a policy or practice of listening to calls between inmates and their attorneys" (doc. #132-9); the sworn affidavits of Steve Poston, Holly George, Jose Castaneda, and Austin McDonald all contains similar statements that this was an isolated, single incident and not a persistent, widespread practice (docs. #132-10, 132-11, 132-12, 132-13).

Plaintiff's only summary judgment evidence offered in opposition is a portion of the deposition transcripts of John Fleming and Kevin Capel. The only lines in these deposition transcripts that are *potentially* supportive of Plaintiff's position are: (1) John Fleming's statement that "there's probably not a policy [prohibiting the listening of attorney phone calls from inmates at the Nacogdoches County jail]" (doc. #139-1 at 2); (2) John Fleming's statement that he would prevent additional instances of listening to privileged phone calls through his "management style and how [he] work[s] within [the] office" (doc. #139-1 at 3); (3) John Fleming's statement that he is not aware of a policy in the county employee manual referencing attorney-client phone calls and has not taken any "concrete steps" to "express into writing the significance of privileged communications" since the single incident occurred, beyond the steps taken at the time of the single incident (doc. #139-2 at 2-3); and (4) similar statements from John Fleming confirming that he has not prepared a written policy instructing employees not to listen to privileged jail phone calls (doc. #139-3). A reasonable jury could not find from these depositions statements, without more, that Nacogdoches County has a widespread, persistent practice of listening to privileged jail phone calls. In fact, Plaintiff's own summary judgment evidence tends to confirm Defendant's position that this was a single, isolated incident.

Thus, Plaintiff has failed to carry his burden under the affirmative custom theory, as Plaintiff cannot establish that Nacogdoches has a persistent, widespread pattern of listening to privileged jail phone calls. Plaintiff has also failed to carry his burden under the failure to train theory, as the above evidence also demonstrates that he cannot establish the pattern necessary to maintain this type of a failure to train claim.[9]

Second, the summary judgment evidence does not support the allegation that Nacogdoches County was deliberately indifferent. Plaintiff must either show that Defendant adopted a custom of listening to privileged jail phone calls with deliberate indifference to the "known or obvious consequences" that constitutional violations would result, or that Defendant failed to train its employees out of deliberate indifference to the constitutional violations that would result from that failure to train. Plaintiff cannot do so for two reasons. First, deliberate indifference generally requires that a plaintiff show there is a pattern of similar instances of constitutional violation. However, for the reasons discussed above, the summary judgment evidence does not support such a pattern, as the violation was limited to a single incident. Second, Defendant's summary judgment evidence, detailed above, further shows that John Fleming, Sheriff Jason Bridges, and others at the County Attorney's office were unaware of any other incidents of listening to privileged jail phone calls. (Docs. #132-1, 132-5, 132-6, 132-9, 132-10, 132-11, 132-12, 132-13). Plaintiff's summary judgment evidence, detailed above, is not sufficient to allow a reasonable jury to conclude otherwise. Thus, if Nacogdoches County was not aware of the single incident of listening to privileged jail phone calls, it could not have been deliberately indifferent to the "*known* or *obvious* consequences" of (allegedly) adopting a custom of listening to such

---

[9] Plaintiff's failure to train claim does not approach the hypothesized narrow range of circumstances discussed in *Canton* where a pattern is not necessary, nor does Plaintiff argue as such in his response (doc. #139) or allege as such in his complaint (doc. #84). *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. at 409-10; *see also* note 9.

phone calls and/or failing to train its employees to not listen to such phone calls, as this result was neither known nor obvious.

A reasonable jury could not find that Defendant, Nacogdoches County, was deliberately indifferent based on the summary judgment evidence submitted. Since deliberate indifference is required for either an affirmative custom or failure to train theory, Plaintiff cannot maintain his Fourth Amendment claim brought pursuant to *Monell*.

### IV.   Conclusion

Accordingly, Defendant's second Motion for Summary Judgment should be granted. For the parties' clarity, because Plaintiff's claim for Fourth Amendment violations can *only* be asserted against Defendant through *Monell* liability, the undersigned's recommendation of granting summary judgment on this ground dismisses the Fourth Amendment claim altogether.[10] If adopted, only Plaintiff's Federal Wiretap Act and Texas Wiretap Act claims will remain in this suit.

### V.   Recommendation

For the foregoing reasons, the undersigned recommends **GRANTING** Defendant's second Motion for Summary Judgment (doc. #132) and **DISMISSING** Plaintiff's *Monell* claim.

### VI.   Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding

---

[10] The undersigned's determination that Plaintiff cannot maintain his Fourth Amendment claim against Defendant under any theory of *Monell* liability does not reverse the court's denial of Defendant's first summary judgment motion as to Plaintiff's Fourth Amendment claim. As noted *supra* § III.B, in its first summary judgment motion, Defendant only asserted that Plaintiff could not establish a constitutional violation and did not raise either the lack of a policy or custom or the lack of deliberate indifference. *See also* note 6.

or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 30th day of June, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE